# Supreme Court of Florida

---

No. SC2026-0971

---

**DENNIS SOCHOR,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 8, 2026

PER CURIAM.

Over forty-four years ago, Dennis Sochor murdered Patricia Gifford.  For this crime, he was sentenced to death.  Governor Ron DeSantis recently signed a warrant directing that Sochor's death sentence be carried out on July 14, 2026.

Following issuance of the warrant, Sochor filed a motion for postconviction relief, raising two claims.  The circuit court summarily denied the motion.  Sochor now appeals that ruling and asks us for a stay of execution.[1]  For the following reasons, we

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

affirm the circuit court's order and decline to stay Sochor's execution.

I

On New Year's Eve in 1981, Sochor and his brother, Gary, met eighteen-year-old Gifford at a lounge in Broward County. She eventually left with them to get breakfast. When Gifford later refused Sochor's sexual advances, he choked her to death and disposed of her body.[2]

After seeing a televised photograph of himself at the lounge with Gifford, Sochor fled the state. Five years later, law enforcement apprehended him in Georgia. He proceeded to give three separate recorded confessions, in which he admitted to killing Gifford after she spurned his sexual advances.

At trial, the State played these confessions to the jury and called various witnesses, including Gary. Based on this and other evidence, the jury found Sochor guilty of kidnapping and first-degree murder and recommended that he be sentenced to death for the latter crime by a vote of ten to two. Agreeing with that

_____

2. Gifford's body was never found.

- 2 -

recommendation, the circuit court sentenced him to death. In doing so, the court found four aggravating factors, including that the murder was cold, calculated, and premeditated (CCP).[3] It found no mitigating circumstances.

Sochor appealed, raising numerous guilt- and penalty-phase claims. Although we determined that there was insufficient evidence to support the CCP aggravator, we concluded that Sochor was not entitled to appellate relief and affirmed his convictions and death sentence. *See Sochor v. State*, 580 So. 2d 595, 603-04 (Fla. 1991). Sochor then successfully sought certiorari review by the United States Supreme Court. *Sochor v. Florida*, 502 U.S. 967 (1991). That Court vacated our judgment and remanded for us to conduct a harmless error analysis regarding the trial court's finding and weighing of the CCP aggravator. *Sochor v. Florida*, 504 U.S. 527, 540-41 (1992). On remand, we conducted the harmless error analysis and once again affirmed Sochor's convictions and death

---

3. The other aggravating factors were: (1) Sochor was previously convicted of a felony involving the use or threat of violence to the person; (2) Sochor carried out the murder while he was engaged in the commission of a felony; and (3) the murder was especially heinous, atrocious, or cruel.

sentence. *Sochor v. State*, 619 So. 2d 285, 293 (Fla. 1993). His judgment and sentence became final when the U.S. Supreme Court denied certiorari review in 1993. *See Sochor v. Florida*, 510 U.S. 1025 (1993); Fla. R. Crim. P. 3.851(d)(1) (providing when a judgment and sentence become final).

Thereafter, Sochor filed his initial postconviction motion, raising thirty claims. The circuit court ultimately denied relief on all of them, and we affirmed on appeal. *Sochor v. State*, 883 So. 2d 766, 769 (Fla. 2004). We also denied Sochor's accompanying petition for writ of habeas corpus. *Id.* at 789-90 & n.27.

Since that time, Sochor has continued to pursue postconviction relief, both in state and federal court, without success. *See Sochor v. State*, 22 So. 3d 68 (Fla. 2009) (unpublished table decision) (first successive postconviction motion); *Sochor v. State*, 83 So. 3d 709 (Fla. 2012) (unpublished table decision) (second successive postconviction motion); *Sochor v. Sec'y Dep't of Corr.*, 685 F.3d 1016, 1018 (11th Cir. 2012) (federal habeas); *Sochor v. State*, 95 So. 3d 210, 211 (Fla. 2012) (third successive postconviction motion); *Sochor v. State*, 246 So. 3d 195, 195 (Fla. 2018) (fourth successive postconviction motion); *Sochor v. State*,

235 So. 3d 304, 305 (Fla. 2018) (fifth successive postconviction motion).

On June 10, 2026, the Governor signed Sochor's death warrant. Sochor then filed his sixth successive postconviction motion pursuant to Florida Rule of Criminal Procedure 3.851, raising two claims. In his first claim, he argued that the State violated *Brady*[4] and *Giglio*[5] by failing to disclose a 2022 letter sent to Sochor's brother, Gary, from a detective with the Broward County Sheriff's Office. That letter sought any information that might lead to the recovery of Gifford's body.

Sochor's second claim raised a facial method-of-execution challenge to Florida's three-drug lethal injection protocol, alleging violations of the Eighth and Fourteenth Amendments to the U.S. Constitution. Specifically, Sochor posited that the initial dose of etomidate is insufficient to render an inmate unconscious for more than five minutes, and the combination of etomidate and the other two drugs results in flash pulmonary edema where the lungs fill

---

4. *Brady v. Maryland*, 373 U.S. 83 (1963).

5. *Giglio v. United States*, 405 U.S. 150 (1972).

- 5 -

with fluid, making it difficult to breathe. Because the etomidate-induced sedation lasts only five minutes, Sochor reasoned, inmates regain consciousness during the pulmonary edema and experience a sensation much like drowning. He argued the pain from the edema, which is not mitigated by any of the drugs in the protocol, violates the constitutional right to be free from cruel and unusual punishment. Instead of lethal injection, Sochor offered death by firing squad as an alternative, alleging that it would be feasible, could be readily implemented, and would significantly reduce the risk of severe pain.

The circuit court summarily denied both claims on the grounds that they are untimely, procedurally barred, and meritless. Sochor now appeals, challenging only the denial of his method-of-execution claim.

II

We review the summary denial of a postconviction motion de novo. *Rogers v. State*, 409 So. 3d 1257, 1262 (Fla.), *cert. denied*, 145 S. Ct. 2695 (2025). And "we will affirm the denial of successive claims that are procedurally barred, untimely, legally insufficient, or refuted by the record." *Randolph v. State*, 422 So. 3d 166, 172

- 6 -

(Fla.) (quoting *Bates v. State*, 416 So. 3d 312, 319 (Fla. 2025)), *cert. denied*, 146 S. Ct. 819 (2025).  Under this framework, we conclude the circuit court properly denied Sochor's method-of-execution claim as untimely and meritless.

For postconviction claims to be timely, a defendant must assert them within one year of his conviction and sentence becoming final.  *See* Fla. R. Crim. P. 3.851(d)(1).  Our rules recognize a narrow exception for claims based on newly discovered evidence.  *See* Fla. R. Crim. P. 3.851(d)(2)(A).  But even claims based on such evidence must "be filed within a year of the date the evidence could have been discovered."  *Bates*, 416 So. 3d at 319 (citing *Wainwright v. State*, 411 So. 3d 392, 401 (Fla. 2025)).

As noted above, Sochor's convictions and death sentence became final in 1993.  In an attempt to avoid rule 3.851's time limitation, Sochor claims his facial challenge is based on newly discovered autopsies of executed inmates spanning from 2017 to 2026, which, according to him, reveal that every inmate has suffered from pulmonary edema.[6]  He contends that he could not

---

6. Sochor draws this inference solely from the autopsy reports and related documents.  Without an expert affidavit to support his

have obtained these autopsies sooner than May 2026, as demonstrated by the failure of recent death-row inmates to obtain public records during warrant litigation.

We disagree. The autopsies have been discoverable since the first one was conducted in 2017. As we recently observed, "Florida's 'current three-drug protocol has remained essentially unchanged since 2017.'" *Lukehart v. State*, 51 Fla. L. Weekly S139, S140 (Fla. May 27) (quoting *Randolph*, 422 So. 3d at 172), *cert. denied*, No. 25-7491, 2026 WL 1530138 (U.S. June 1, 2026); *see also Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1177 (11th Cir. 2019) (detailing Florida's adoption of etomidate in January 2017). Consequently, the alleged evidence supporting the assertions Sochor now makes has been available for years, including during Sochor's previous postconviction litigation. *See Randolph*, 422 So. 3d at 172. Sochor raises these issues long after the evidence

---

assertion, we find his allegations to be speculative. *See Heath v. State*, 426 So. 3d 1253, 1261 (Fla.) ("[S]peculative and conclusory allegations that lethal injection protocols present a substantial risk of serious harm are insufficient to warrant an evidentiary hearing." (citing *Cole v. State*, 392 So. 3d 1054, 1065 n.18 (Fla. 2024))), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026).

became discoverable.[7]  As such, his claim is untimely.

The claim is also meritless.  "This Court has repeatedly upheld Florida's lethal injection protocol, including the etomidate protocol." *Tanzi v. State*, 407 So. 3d 385, 393 (Fla.) (first citing *Asay v. State*, 224 So. 3d 695, 700-02 (Fla. 2017); and then citing *Cole v. State*, 392 So. 3d 1054, 1064-65 (Fla. 2024)), *cert. denied*, 145 S. Ct. 1914 (2025); *see also Rogers*, 409 So. 3d at 1268 (rejecting challenge to etomidate protocol on the merits); *Long v. State*, 271 So. 3d 938, 944-46 (Fla. 2019) (rejecting as-applied and facial challenges to the lethal injection protocol).  Accordingly, we affirm the circuit court's rejection of this claim.[8]

---

7.  We further note that the discovery procedures for postconviction defendants found in Florida Rule of Criminal Procedure 3.852 and section 27.7081, Florida Statutes, "supplement"—not "supplant"—the chapter governing public records (chapter 119).  *Hitchcock v. State*, 431 So. 3d 514, 525 (Fla.), *cert. denied*, No. 25-7255, 2026 WL 1170862 (U.S. Apr. 30, 2026).  We therefore find Sochor's argument, which highlights the limited success of inmates in obtaining public records during warrant litigation, unpersuasive.  The earliest autopsies could have been discovered years ago under the procedures outlined in chapter 119.  In fact, Sochor himself received this information from a third party's public records request under that chapter.

8.  To the extent Sochor relies on the Eleventh Circuit's recent decision in *Lee v. Commissioner, Alabama Department of Corrections*, No. 26-11864, 2026 WL 1651147 (11th Cir. June 8,

## III

For the foregoing reasons, we affirm the circuit court's summary denial of Sochor's postconviction motion. In light of our affirmance of the sole claim Sochor raised on appeal, we deny his motion for a stay of execution. And we decline to hold oral argument or entertain a motion for rehearing. The mandate shall issue immediately.

It is so ordered.

COURIEL, C.J., and LABARGA, MUÑIZ, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.

An Appeal from the Circuit Court in and for Broward County,
    Martin Samuel Fein, Judge
    Case No. 061986CF015270A88810

Suzanne Keffer, Capital Collateral Regional Counsel, Paul Kalil, Assistant Capital Collateral Regional Counsel, and Michael T. Cookson and Anna-Nicole Cooke, Staff Attorneys, Office of Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

    for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida; Celia Terenzio, Chief Assistant Attorney General, Leslie T. Campbell,

---

2026), that decision does not alter our conclusion. There, the defendant challenged Alabama's use of nitrogen hypoxia as a method of execution. *Id.* at *1, 3. Because Florida's method of execution materially differs, we find *Lee* inapposite.

- 10 -

Senior Assistant Attorney General, and Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida,

for Appellee